Jones, J. (dissenting).
With full respect for my associates in the majority, I must observe that they misconceive and fail to address the only real contention which defendant has persistently pressed throughout the entire course of this criminal proceeding and which has troubled every Judge who has had any part in this case before it reached our court—is this a case of horrendous misidentification because, for reasons which may be inferred, the attribution of guilt to this defendant had been predetermined? If there were no more to the case than is recited in the majority opinion I would be an entirely satisfied member of that majority. But there is more, and it is disturbing and troubling to the degree that I must dissent. The question goes to the heart of our criminal justice jurisprudence, and is not insulated from our responsibility of review by the intervention of a jury verdict for which, in a narrow gauge, it may perhaps be said that there was sufficient evidence, when the record as a whole demonstrates that the verdict cannot stand.
In this most unusual case several factors converge to impel me to the conclusion that, as a matter of law, this defendant’s guilt has not been established beyond a reasonable doubt. Indeed, I am persuaded that it very early became impossible for this defendant to have a fair, objective trial.
It all started when, although at one turn in their chase they had lost sight of the fleeing gunman, the police had administered a brutal beating to defendant as they arrested him. (This may have been understandable in human terms because to their knowledge a fellow undercover officer had just been shot in the abdomen in cold blood and then, severely wounded, had been forced by the gunman to drag himself to open the cash register at O’Lunney’s Steak House.) There was immediate and widespread publicity as to the details both of the shooting and of defendant’s capture as well. Publicity and coercive attention escalated further when defendant was released on only $500 bail. To have thrashed even a guilty man mercilessly would have been hard enough to justify; to have it turn out that the man so cruelly beaten might be innocent would have been intolerable to police and community alike. These circumstances, not surprisingly, operated to expose the various law enforcement agencies and even the media to temptation to prejudgment which was thereafter beyond repair or recall. There was pressure, almost irresistible, quickly and surely to hang this crime on someone; and, after all, *125 defendant had been on the scene and at the critical moment, and the police had set upon him as though there was no doubt as to his guilt.
The very extensive, detailed and persuasive testimony of impressive character witnesses as to defendant’s prior character, habits of general conduct, dress and speech and reputation as a business and family man of long standing was wholly inconsistent with any belief that this was the man who had committed the crimes of which he was charged. On the other side, the identification testimony, while it surely might have been sufficient in the normal case, was not strong, and this was not a normal case. All identifications, other than by the interested police, were based on brief observations in a very dark, crowded bar by men who had been drinking heavily. The witnesses could have been exposed to impermissible identification procedures, but defense counsel was prevented from exploring this possibility. The police refused to permit the attorney at the station house lineup to make a transcription or to photograph the lineup. The prosecution had refused to divulge the names of the identifying witnesses. It was only after the conclusion of the pretrial identification hearing and the denial of the motion to suppress that the court ordered their disclosure. By these means effective inquiry and assessment as to the opportunities for independent source identification and the possibility that there had been improperly suggestive prelineup procedures was frustrated. In this circumstance the untested identification testimony could never be said to be strong.
Throughout the trial there occurred a continuing series of individually minor but genuinely disconcerting events, each of which singly invited some doubt that defendant was in fact the assailant:—the ill-fitting hat dropped by the fleeing gunman against the overwhelming testimony that defendant never even wore a hat; the police testimony of the monotonous, four-letter obscenity repeatedly uttered from his stretcher by defendant whose acquaintances said he never swore or cursed; the necessity that there have been a ninth round in what was normally an eight-cartridge pistol to explain the remaining six live rounds and to jibe with the proof that the gunman had fired three shots; the absence in a case of this special significance of any proof or explanation as to possible fingerprints on the gun; the failure of the prosecutor to introduce or to make available the results of the *126 paraffin test performed on defendant. That a savage crime had been committed there can be no doubt; that this defendant was its perpetrator is a wholly different matter.
Recurring misdoubt has been evoked at each stage of the judicial consideration of this case. First, bail was fixed at an absurdly low figure for one charged with the crimes for which defendant was arrested. The two-hour resistance of the holdout juror to what can only be characterized as coercive supplemental instructions was unusual. Then, on pronouncing sentence the Trial Judge articulated his own misgivings. "[V]ery frankly, I cannot in good conscience reconcile the actions of this defendant, resulting in this conviction, with his background. It’s almost impossible to see how he got himself involved in the situation for which he stands before this bar today. * * * If I did not have a psychiatric report from the clinic which reveals to this Court that there are no findings of emotional illness or psychiatric recommendations, I would be inclined to feel this defendant is a schizophrenic and he’s been living or attempted a Dr. Jekyll and Mr. Hyde life, because one cannot possibly reconcile his actions on one behalf with that of the other.” The Appellate Division in affirming defendant’s conviction, wrote (53 AD2d 821): "Any difficulty in reconciling the apparent inconsistency between the crimes charged against defendant and his prior character, habits and reputation was resolved by the jury after a trial that we find free of any prejudicial error. Nevertheless, we suggest that the inconsistent factors above mentioned should appropriately be given early scrutiny by the Parole Board toward ameliorating the consequences of any claimed miscarriage of justice arising out of the conviction(Emphasis added.)
The combination of all these factors, in impact greater than the sum of their individual meanings—in truth a synergism— impels me to the conclusion that the proof in this case was insufficient, as a matter of law, to convict defendant beyond a reasonable doubt. In this circumstance it becomes our judicial responsibility to set aside defendant’s convictions. "This court has for a long time and still does review a record in a criminal action as a whole and is empowered and obliged to conclude on a deficient record that guilt has not been established beyond a reasonable doubt as a matter of law [citations omitted].” (People v Santos, 38 NY2d 173, 175-176; People v Reed, 40 NY2d 204, 208.) One is also agonized by the recollection of the eventually conceded misidentification of the defend *127 ant in People v Whitmore (28 NY2d 826). If there be a miscarriage of justice here it cannot be ameliorated by Parole Board action as the Appellate Division suggested. The responsibility is judicial on this record.
Accordingly, for the reasons stated I dissent and would reverse the order of the Appellate Division, vacate the judgment of conviction and dismiss the indictment.
Judges Jasen, Fuchsberg and Cooke concur with Judge Gabrielli; Judge Jones dissents and votes to reverse in a separate opinion in which Chief Judge Breitel and Judge Wachtler concur.
Order affirmed.